333 So.2d 1 (1976)
The CITIZENS OF the State of FLORIDA, Petitioners,
v.
William T. MAYO, Chairman, et al., Respondents.
No. 47503.
Supreme Court of Florida.
May 5, 1976.
*2 Woodie A. Liles, Public Counsel, Lakeland, and Donald W. Weidner, Deputy Public Counsel, Tallahassee, for petitioners.
William L. Weeks, Prentice P. Pruitt, Donald R. Alexander, Tallahassee, and Robert P. Gaines and C. Roger Vinson, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for respondents.
ENGLAND, Justice.
This cause is here on a petition for the writ of certiorari to review an order of the Public Service Commission awarding Gulf Power Company an interim rate increase under Section 366.06(4), Florida Statutes (1975).[1] Our jurisdiction to review the petition is found in Article V, § 3(b)(3) of the Florida Constitution.
On July 2, 1974, Gulf Power filed a petition with the Commission seeking both an immediate temporary (or "interim") and a permanent annual increase of approximately $18,800,000 in its electric utility rates. The interim rate increase request was the first filed by any public utility in the State of Florida under a newly-enacted "file and suspend" provision of Chapter 366, Florida Statutes.[2]
On July 23, 1974, the Commission suspended the effectiveness of the proposed rate increase in Order No. 6196, stating:
"WHEREAS, Gulf Power Company, a public utility subject to our jurisdiction, has filed on July 2, 1974, a Petition and new proposed rate schedules pursuant to Section 366.06(4), Florida Statutes, seeking to adjust its rates and charges so as to produce additional annual gross revenues in the amount of $18,798,000; and ...
WHEREAS, upon consideration of the proposed rates and charges contained in the aforesaid rate schedules it appears the same may not be justified and may be unjust, unreasonable, unduly discriminatory or preferential, or otherwise unlawful under the provisions of Chapter 366, Florida Statutes; ...
[T]he Commission has determined it should withhold consent to the operation of all the new rate schedules pending public hearings... ."
*3 On November 5, 1974, the Commission published a notice stating that public hearings would be held on December 10-13, 1974 in Gulf Breeze, Florida.[3] On November 18, Gulf Power moved for immediate rate relief at the December hearing, and on November 20 the Commission republished its hearing notice with amendments designed to give notice of Gulf Power's motion, stating:
"The purpose of the hearings in this Docket shall be to permit the Petitioner to make a presentation of its testimony and exhibits in support of its Petition for a rate increase and its Motion for Immediate Rate Relief, to permit all public witnesses who so desire the opportunity to give testimony regarding the proposed rate increase and the Motion as well as the adequacy and the quality of service rendered by Gulf Power Company. Questions for clarification will be permitted with respect to the Petition for a rate increase and the Motion, but cross examination of Company witnesses will be deferred until a time and place to be later announced by the Commission. Interveners, [sic] if any, actively participating in the case will be given an opportunity to present evidence at a time and place to be later announced by the Commission."
Public counsel for the State of Florida intervened in the rate proceeding and was granted authority by the Commission to participate fully.[4]
The scheduled hearings were held on December 11 and 12. The record before us indicates that they included, generally, (1) direct testimony from Gulf Power in support of its rate increase requests, (2) "clarifying questions" from the Commission's staff, from public counsel and from other intervenors with respect to Gulf Power's testimony and evidence, and (3) testimony and evidence from public witnesses both for and against the proposed rate increases. Public counsel did not cross-examine Gulf Power witnesses or present any direct evidence contradictory of the data supplied by Gulf Power.[5] Throughout the hearing, Gulf Power restated its request for immediate rate relief, hoping the Commission would act before year-end.
On December 20, 1974, the Commission met in a so-called "agenda conference" and, without notice to the parties in this case, entered its Order No. 6420 awarding Gulf Power an interim rate increase of approximately $17,200,000. The Order recited in relevant part:
"Public hearings on the Petition and Motion were held in Gulf Breeze, Florida, on December 11 and 12, 1974. At that time the Company presented its case in chief in support of both its Petition and Motion. Although full cross-examination was deferred until the week of February 11, 1975, questions for clarification were permitted by all interested parties. Also, members of the public were afforded the opportunity to present their views regarding the proposed rate increase."
The Order directed Gulf Power to file a bond to protect Gulf Power's customers in the event the interim award was later found to be unjustified.[6]
*4 On May 7, 1975, the Commission entered Order No. 6650, awarding Gulf Power a permanent rate increase, confirming the interim rate increase previously awarded, and cancelling Gulf Power's bond. That portion of the order confirming the interim rate increase is the subject of public counsel's present appeal.[7]
The sole issue we are asked to review relates to the Commission's procedures which led to its grant of the interim rate increase. Public counsel contends that due process under the Federal and Florida Constitutions and under applicable statutory law, requires an opportunity for the cross-examination of Gulf Power's witnesses and the presentation of evidence by opponents of the interim rate increase. Public counsel does not contend that the statute is unconstitutional, or that the Legislature lacked power to enact a "file and suspend" law. Public counsel contends only that the "hearing" which the Commission conducted did not meet required due process standards. This contention requires an analysis of the statutory scheme created by the Legislature for these rate proceedings.
Section 366.06, Florida Statutes (1975), provides general standards for the award of rate increases to public utilities in the State of Florida. The general procedure has been and remains that rate increases are awarded only after a public hearing in which testimony is presented by all interested parties and cross-examination is permitted.[8] In the framework of this general approach to rate regulation, the 1974 Legislature enacted a special provision expressly designed to reduce so-called "regulatory lag" inherent in full rate proceedings. Subsection 366.06(4) was created to provide a series of alternatives for the Commission whenever, in conjunction with a general rate increase request for which a full rate proceeding is required, a utility company seeks immediate financial relief. The Commission's alternatives in these situations are:
(1) If the Commission does not affirmatively act within 30 days to suspend the proposed new rate schedule filed as a part of the request for higher rates, the new rates go into effect automatically on the 31st day following the utility company's filing. Since the Commission's inaction is equivalent to its consent to the new rate schedule, no bond is required of the utility and there is no mechanism by which customers of the utility system can ever recover interim charges which, after the full rate proceeding, the Commission may find to have been wholly or partly unwarranted.
(2) If the Commission acts within thirty days to suspend all or part of the tariffs, the utility may not charge its customers the proposed new rates. The Commission's action is effective on a day to day basis until either (a) it grants full or partial consent to the new rates, or (b) eight months elapse from the date the new schedules were filed. If consent is given before the time expiration, as it was here, the utility may then begin to charge the new rates. Where consent is continuously withheld, the utility may still begin to charge its customers on the new basis after eight months have passed, under bond and record-keeping requirements required by statute.
As a first matter in this proceeding, we note that the Legislature's attempt to reduce regulatory lag will be advanced whether we accept public counsel's argument that a right to produce evidence and to cross-examine witnesses is required in all cases where the Commission has acted *5 to suspend a rate schedule, or whether we accept Gulf Power's argument that no hearing or other form of "due process" is required at all with respect to this class of cases.[9] Since the general objective of the Legislature is met in either case, our more narrow goal is to determine how the new mechanism for accelerated rate relief was intended to fit into the general scheme of rate regulation. In approaching that task, these conclusions seem beyond dispute:
(1) The Legislature did not intend all public utility filings to go into effect without some review by the Public Service Commission. Had that been the intent, the Legislature would not have created a "suspend" power in the Commission.
(2) By placing the file and suspend law in Section 366.06, however, the Commission was given direct responsibility in this type of proceeding to insure that all charges collected by a public utility are lawful. See Section 366.06(1), Florida Statutes (1975).
(3) The Legislature did not intend a full rate hearing before all new rate schedules become effective. Had it intended that result, there would have been no need to enact subsection 366.06(4) at all.
(4) The Legislature obviously intended to allow public utilities the benefit of proposed rate increases from the date they could satisfy the Commission on the basis of an uncontested preliminary showing that the needs of the company were such as to necessitate immediate financial aid. Where the Commission is so satisfied after a preliminary analysis extending over a period not longer than thirty days, the rates become effective without further action by the Commission.[10] (It follows from this, of course, that the Commission's affirmative act of suspending proposed rates means that the Commission is dissatisfied with the utility's preliminary showing.)
(5) The Legislature has relieved the Commission of responsibility for balancing the rights of the company and its customers when the utility is unable to develop new facts to show that there exists good cause to put into operation the new rates which have been found to be unjustified on the basis of the preliminary showing. This was done by providing that Commission inaction following an initial suspension is overcome by time, and that the rates become effective at the end of eight months, automatically, under bond.
(6) In light of the conclusion in paragraph 5 and the fact that the Commission must provide its "reason or written statement of good cause" whenever it withholds consent to the new rates,[11] the Legislature must have intended that there be some presentation of evidence or development of new facts between that initial withholding of consent by the Commission and its later grant of consent.
The questions for our review, then, narrow down to these: what showing must be made before the Commission consents to rates once determined to be unjustified; what showing was made in this case; and of what effect on these proceedings are the procedures actually adopted by the Commission in this situation?
Public counsel argues for minimal due process (principally an opportunity to be heard and a right of cross-examination) as a general matter, and in this case specifically because the Commission had publicly promised these rights. He essentially argues that "hearings" in Florida, in the *6 context of rate regulation under Section 366.06, connotes cross-examination and direct contradictory evidence. He concedes, however, that a full rate hearing obviously was not intended. Gulf Power argues that the Commission may employ any process ordinarily permitted in administrative proceedings, including uncontested preliminary presentations if circumstances dictate.[12]
We agree with public counsel that the Legislature's placement of subsection 366.06(4) suggests no reason to alter the public policy of this state in favor of traditional due process rights in rate "hearings", permanent or interim. On the other hand, we agree with Gulf Power that an inflexible hearing requirement was not intended inasmuch as the Commission can obviate any hearing requirement simply by failing to act for 30 days. We must conclude, therefore, that the Legislature intended to provide elected Public Service Commissioners with a range of alternatives suitable to the factual variations which might arise from case to case. The range of options might include, for example, developing additional facts through curative supplemental filings where specific deficiencies are described in the required statement of "good cause" or are otherwise targeted through questions formulated by the Commission's staff.[13] The Commission could, of course, elect to conduct public hearings in an interim rate proceeding, and thereby allow a utility's data to be challenged by cross-examination or to be rebutted by evidence presented in opposition to the interim increase. It could schedule a presentation of the company's data without authorizing scrutiny or challenge, provided some public benefit would warrant the expenditure of state funds for that purpose.
Whatever public format the Commission chooses to provide, however, special conditions pertain in cases where public counsel has intervened. This is a consequence of the statutory nexus between the file and suspend procedures and the role prescribed for public counsel in rate regulation. Public counsel was authorized to represent the citizens of the State of Florida in rate proceedings of this type. That office was created with the realization that the citizens of the state cannot adequately represent themselves in utility matters, and that the rate-setting function of the Commission is best performed when those who will pay utility rates are represented in an adversary proceeding by counsel at least as skilled as counsel for the utility company. The office of public counsel was created by the same enactment which brought the utilities accelerated rate relief.[14] Under these circumstances, the Commission cannot schedule a "public hearing" and preclude public counsel, the public's advocate, from acting to protect *7 the public's interest.[15] Indeed, where public hearings are scheduled for interim rate increases these procedural requirements may be more important than they are for permanent rate increases, since the need for special expertise in rate matters is compressed into a shorter period of time.
Whether public hearings are scheduled or not, the test to support an interim rate increase should be whether the Commission had additional or corroborative data on which to grant temporary rate relief at the time that it lifts its suspension  data which it did not initially have, or data which clarifies or amplifies matters initially found to be inadequate. The requisite showing, naturally, will vary from case to case, and judicial review of an interim award will be premised on the traditional test of whether the award is supported by competent and substantial evidence. Section 120.68(10), Florida Statutes (1975).
Turning now to facts before us, we see that the Commission here chose to conduct public hearings by publishing three notices in which it promised intervenors, including public counsel, the right to present evidence and to cross-examine Gulf Power's witnesses. Under these circumstances the Commission should have provided public counsel the full due process rights which its hearing notices promised.[16] By foreclosing public counsel's effective participation in the interim rate process after having assured it, the procedures used by the Commission to grant interim rate relief in this case were plainly improper.[17] As a consequence, we are forced to consider what consequence should attend the impropriety.
Neither Gulf Power nor public counsel were responsible for the impropriety of the Commission's procedures. Since the defect is not of constitutional significance, and despite the fact that public counsel was *8 misled, we believe that it would be unduly harsh to punish Gulf Power by directing a refund of charges collected between December 30, 1974 and March 2, 1975.[18] The Commission's procedural defect does not alone establish a failure by Gulf Power to justify the interim award. The test to be met is and was whether, from the record, Gulf Power developed substantial and competent evidence to sustain the interim award after the Commission first rejected its proposed rate increase as "unjust, unreasonable, unduly discriminatory or preferential, or otherwise unlawful." On this point we simply lack sufficient information to proceed.
Commission Order No. 6420, first approving the interim award, recites:
"a comprehensive examination of the documentary evidence submitted by the Company has not been undertaken although the Company did present its case in chief on December 11 and 12, 1974. We see no legal impediment to granting interim relief under the rationale of the Bell decision, since it is on all fours with the case at bar. While one party has suggested that no interim relief can be granted until full cross-examination on this portion of the case is completed, such an approach would be contrary to the guidelines laid down by the Supreme Court in a case such as is before us herein. Moreover, full and complete protection is afforded the public inasmuch as the increases which are being authorized hereinafter shall be subject to refund in the event our comprehensive investigation to be undertaken in February, 1975 reflects such increases are unreasonable or unjustified."
Although the Commission's order also made certain financial adjustments to Gulf Power's request which necessarily flow from their analysis of the data presented, it is apparent that the Commission reserved any serious scrutiny of the request until after the full rate proceeding. Moreover, we cannot discern from the Commission's order whether Gulf Power made an evidentiary showing after their proposed rates were first suspended, which would then warrant the suspension being lifted. As previously stated, that showing must be made in fact and then identified for judicial review in the interim award order.
Commission Order No. 6650, confirming the interim award after the full rate proceeding, is similarly defective. The Commission there states that the interim award cannot be excessive or unreasonable inasmuch as Gulf Power's revenue requirements as established in the full proceeding exceed those authorized on an interim basis. First, we note a failure to identify the particular matters which persuaded the Commission to overturn its initial rejection of Gulf Power's rate request on the ground that the requested rates were unjust, unreasonable, unduly discriminatory or preferential, or otherwise unlawful. Second, we reject the suggestion that full public hearings conducted in February 1975 could breathe life into the prior proceedings. If the full rate proceeding could provide retroactive justification for an interim award there would have been no need for the Commission to be given preliminary review and suspension authority. The Legislature would have simply authorized immediate increases upon the filing of new rates, under bond.
There being inadequate findings in the Commission's orders,[19] as a consequence of which we are unable to discern whether Gulf Power's interim rate increase is supported by competent substantial evidence in the record, and there being a material error in procedure which has affected both the fairness and the correctness of the interim rate proceeding, we are compelled to remand this case for further action by the Commission *9 in conformity with this opinion. Sections 120.68(8) and (10), Florida Statutes (1975).
It is so ordered.
OVERTON, C.J., and ROBERTS, ADKINS, BOYD, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] A previous petition seeking review of an initial award of this interim rate increase was denied by the Court on March 7, 1975, on the ground that the order then brought to the Court was not reviewable. This previous petition was one of several requests for our direct review of interim rate increase awards which were granted by the Commission in 1975. In each case the Court was asked, but declined, to treat the initial interim rate increase order as final. E.g., Citizens of Florida v. Mayo, (Florida Power Corp.,) 316 So.2d 262 (Fla. 1975); Citizens of Florida v. Mayo (Southern Bell Tele. & Tele. Co.), 322 So.2d 911 (Fla. 1975).
[2] Ch. 74-195, § 4, Laws of Florida, now appearing as Section 366.06(4), Fla. Stat. (1975).
[3] An amended notice was published on November 8, 1974, changing the first hearing date to December 11.
[4] The office of public counsel, which was created to represent the public in rate proceedings before the Commission, came into existence in the same legislative enactment which created the file and suspend rate procedure. Chapter 74-195, § 1, Laws of Florida, now appearing as Sections 350.061-0614, Fla. Stat. (1975).
[5] Public counsel indicated a lack of preparedness to either present evidence or cross-examine Gulf Power's witnesses, claiming that the notice of hearing indicated that these facets of the hearing would be held at a later date.
[6] Bond is required under Section 366.06(4) for rates allowed to go into effect after the expiration of eight months from a rate request filing. Although the statute would not have required bond on December 20, 1974, it would have required bonding not later than March 2, 1975.
[7] A motion to dismiss the petition in this case was denied on October 15, 1975. 324 So.2d 35 (Fla. 1975).
[8] Section 366.06(1)-(3), Fla. Stat. (1975). These proceedings are normally called full rate proceedings and will be so described for convenience here.
[9] Obviously, the question of due process does not arise if the Commission does not suspend the new rates within 30 days. In those cases, the Legislature has directed that proposed rates become effective on the 31st day.
[10] This alternative will generally be impolitic for elected Public Service Commissioners. The Commissioners would have to justify their analysis of the company's needs, generally based on staff recommendations, without the benefit of a publicly developed record and without any publicly expressed reasons to support the new increase.
[11] See Section 366.06(4), Fla. Stat. (1975).
[12] Gulf Power also argues for the applicability to this proceeding of our decision in Southern Bell Telephone & Telegraph Co. v. Bevis, 279 So.2d 285 (Fla. 1973), on which the Commission also relied. The argument and reliance are not well taken. Southern Bell, which involved a proceeding under Chapter 364, Florida Statutes, is not applicable to proceedings under subsection 366.06(4). There, without the present legislative authorization, we held that the Commission could award interim rate relief where a financial need was demonstrated on the basis of the utility's initial filings with the Commission. The Legislature has now addressed itself to the subject of interim rate relief, consistent with our views in Southern Bell it so happens, so that reliance on judicial intervention into this aspect of rate regulation is no longer justified.
[13] In these cases, it would seem essential that a grant of previously withheld consent be accompanied by a written statement setting forth the reasons why there then exists good cause to grant the rate relief which was earlier denied for good cause. By this means public counsel (or any other contestant) will have the factual basis upon which to challenge the validity of the Commission's interim award through cross-examination at the full rate proceeding.
[14] See footnote 4 above.
[15] As to the indispensability of cross-examination generally, see In re Integration Rule of The Florida Bar, 103 So.2d 873, 876 (Fla. 1956). Gulf Power does not contend, and the Commission did not suggest, that "clarifying questions" are the equivalent of cross-examination.
[16] At the time of these proceedings the acts of the Commission in rate proceedings were subject to Florida's Administrative Procedure Act, Chapter 120, Fla. Stat. (1973), which in relevant part provided:

"120.26 Procedure for due process.  The agency shall afford each party authorized by law to participate in an agency proceeding the right to:
(1) Present his case or defense by oral and documentary evidence,
(2) Submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts... ."
Any seeming inconsistency between these mandatory procedures and those later established in the file and suspend law seemingly would have to be resolved in favor of the former. Section 120.20 of that Act declares the Legislature's unequivocal intent that "[s]ubsequent inconsistent laws shall supersede ... [the Act's procedures] only to the extent that they do so by express reference." Although nothing in the file and suspend law expresses a later legislative directive for the non-applicability of Section 120.26, there is no inconsistency between the due process procedures required before "final" agency action (Section 120.21(3), Fla. Stat. (1973)), and interim agency action under the file and suspend law. (It should be noted that the Act applicable to this proceeding was superseded by a completely revised set of administrative procedures as of January 1, 1975. Chapter 74-310, Laws of Florida. The new Act has no effect on this proceeding. Section 120.72(2), Fla. Stat. (1975); Lewis v. Judges of District Court of Appeal, 322 So.2d 16 (Fla. 1975)).
[17] In the Commission's defense it should be noted that the notices it released after Gulf Power moved for interim relief were merely amendments to its first notice, inserting references to the interim request in sentences which had been framed when the full rate proceeding was the only matter being noticed. Had the Commission exercised more care in framing its later notices, it would have delineated the different procedures it intended to apply to the interim and full proceedings, respectively.
[18] Collections after this date are protected by statute.
[19] Sections 120.59(1) and (2), Fla. Stat. (1975).