342 So.2d 63 (1976)
MAULE INDUSTRIES, INC., Etc., Petitioner,
v.
William T. MAYO, Etc., et al., Respondents.
The CITIZENS OF the State of FLORIDA, Cross-Petitioners,
v.
William T. MAYO, Etc., et al., Respondents.
No. 47301.
Supreme Court of Florida.
December 22, 1976.
Rehearing Denied February 28, 1977.
*64 John W. McWhirter, Jr. of Cason, McWhirter, Henderson & Stokes, Tampa, for petitioner.
William L. Weeks, Prentice P. Pruitt and Donald R. Alexander, Tallahassee, for Florida Public Service Comm.
Talbot D'Alemberte, Shepard King and Richard Smith, of Steel, Hector & Davis, Miami, for Florida Power and Light Co., respondents.
Woodie A. Liles, Public Counsel, Donald W. Weidner, Deputy Public Counsel, and C. Earl Henderson, Associate Public Counsel, Tallahassee, for the Citizens of the State of Florida, cross-petitioners.
ENGLAND, Justice.
This case is brought to us by public counsel for the State of Florida, asking that we review and either decrease or reverse an interim rate increase granted by the Public Service Commission to Florida Power and Light Company pursuant to Section 366.06(4), Florida Statutes (1975), the so-called *65 "file and suspend" law applicable to electric utility companies. We have jurisdiction for review pursuant to Article V, Section 3(b)(3) of the Florida Constitution, and Section 366.10, Florida Statutes (1975).

FACTS
On August 2, 1974, Florida Power and Light Company ("FP&L") petitioned the Commission for a permanent rate increase of approximately 143 million dollars, based on a projected test year ending December 31, 1974. On August 14, the Commission suspended the effectiveness of the proposed rate increase in an order which found that the proposed rates
"may not be justified and may be unjust, unreasonable, unduly discriminatory, or preferential, or otherwise unlawful... ."
After the Commission had scheduled public hearings on the proposed rate increase, FP&L requested a partial interim rate increase of approximately $70 million based on a test year ending September 30, 1974. The basis for this request was an alleged erosion of FP&L's previously granted rate of return, stemming mainly from higher operating costs. The Commission scheduled and held a public hearing on the request for interim relief prior to the completion of the hearings on the full rate increase.
During the interim rate hearing, the Commission received extensive evidence concerning FP&L's financial position and increased costs, including testimony that 79% of the total increase in operating costs was attributable to increased fuel expenses (the accounting treatment for which is the principal source of the controversy now before us).
On January 10, 1975 the Commission granted FP&L an interim rate increase of nearly 70 million dollars,[1] treating the award as proper both under Section 366.06(4) and this Court's decision in Southern Bell Tel. & Tel. Co. v. Bevis, 279 So.2d 285 (Fla. 1973). One Commissioner dissented from the interim award on the ground (among others) that $54 million of the $70 million increase represented nonrecurring, unrecovered fuel costs which, through operation of FP&L's automatic fuel adjustment clause, would be recovered by the company within months of the end of the test year used to compute the interim award.
On April 1, 1975, the Commission granted FP&L a permanent rate increase of more than $107 million.[2] In its order the full Commission adopted the dissenting view expressed in the interim order that unrecovered fuel costs are nonrecurring and should be disallowed as an operating expense in the test year computation.[3] Nonetheless, *66 the Commission affirmed the entire interim rate increase previously awarded, finding that it was fair and reasonable in light of the fact it amounted to less than the amount awarded on a permanent basis. Review of the Commission's order was timely sought here.[4]

ISSUES
After the petition for review in this case was lodged here, but before all briefs had been filed, we rendered our decision in Citizens of Florida v. Mayo (Gulf Power Co.), 333 So.2d 1 (Fla. 1976). All parties concede that, despite some procedural matters peculiar to this case,[5] the Commission's overall procedures in connection with FP&L's interim rate increase were compatible with the standards set out in that decision. In fact, many of the subsidiary issues raised in this case have been resolved in our Gulf Power decision and need not be elaborated here.[6]
Public counsel presents two principal issues for our review. He contends that the Commission failed to support its interim rate award with findings of fact adequate to meet the standards described in Gulf Power, and that the Commission erred in approving $54 million of unrecovered fuel costs in the interim rate increase. The Commission defends the interim rate increase on essentially two grounds. It says there was ample evidence at the interim hearing to support the need for emergency rate relief inasmuch as the substantive standard developed in Southern Bell provides an adequate legal foundation to support a temporary award under Section 366.06(4). It also says that the disallowance of unrecovered fuel costs in the final order is irrelevant to the treatment of that item in *67 the interim award because, until figures for the final three months of 1974 became available, it was impossible to ascertain that the lag in recovery of fuel costs was merely a temporary phenomena.[7]
FP&L strongly supports the contention of the Commission that the substance of the Southern Bell decision, described by FP&L as a "make-whole" standard for utilities, should remain as the minimum legal standard under which statutorily-processed interim rate awards should be judged. The company also argues that the final order's finding of rate reasonableness is alone adequate to support the interim award under the so-called "end result" doctrine of Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). In that case it was held that methods of computation used by a regulatory agency are to be ignored if the final ruling is not unreasonable on the basis of the entire record. The "end result" test has, of course, been expressly adopted in Florida.[8] We note, however, that this rate-reviewing test was judicially developed for procedures vastly different from those available under the file and suspend statute, and we decline to extend its applicability to the confirmation orders which, in final rate awards under Florida's new statutory scheme, approve earlier interim rate awards.

ANALYSIS
The two principal points of contention for our resolution, then, are, first, whether there exists an adequate factual basis for the Commission's interim rate award, and, second, whether the nonrecurring $54 million cost item should have been revised for the interim award. We hold that an adequate factual justification for partial relief was shown, but that unrecovered fuel costs were improperly considered in computing the amount of interim relief that was awarded.
In Gulf Power we prescribed the standards for granting an interim award once the Commission acts to suspend a rate schedule filed by a utility. We there said that an order of the Commission which lifts a suspension must state with particularity the facts which were developed to overcome the Commission's initial decision to suspend the effectiveness of new rates. In this case the Commission awarded interim rate relief on the basis of FP&L's showing of general financial difficulties, including a specific showing that net revenues had dropped to a level which constituted
"a serious threat to the continued ability of the Company to attract capital and maintain its present bond rating."
Although not identified with particularity in the order granting interim relief, adequate evidence appears to have been developed *68 at the interim rate hearing, or through filings made after the suspension, to overcome the Commission's initial rejection of FP&L's $143 million initial rate request. The interim order describes, among other factors, the company's erosion of earnings below the last authorized minimum rate of return, and it states that rate base and net operating income data were prepared on a basis consistent with the Commission's last full award to FP&L.[9] While these findings do not meet in full the specificity we have said the file and suspend law requires, the order in this instance was entered before our Gulf Power decision clarified the legislative standard. Our independent review of the record evidence developed after the initial filing convinces us that, except for the erroneous treatment of unrecovered fuel costs, the evidence to warrant lifting the rate suspension was adequately identified in the Commission's interim rate order in this case. Greater factual clarity in these types of orders, however, will be expected in future cases.
In concluding that FP&L adequately justified its need for interim rate relief, we necessarily accept FP&L's contention that the "make-whole" legal standard of Southern Bell is a proper substantive basis on which to award interim rate relief under Section 366.06(4).
We now turn from the Commission's legal standard for interim relief to the amount actually awarded in this case. We find that the Commission allowed FP&L to exaggerate its operating expenses for the purpose of computing a revenue deficiency by including in its computations a nonrecurring item wholly inappropriate to the test year tool of rate-making. The error first occurred when the Commission accepted FP&L's net operating income figures as being consistent with its last full rate order for the company. In fact those figures were not compatible with the prior treatment of unrecovered fuel costs. Commissioner Hawkins correctly identified this early error in her dissent from the interim award. The error was later compounded by the Commission's refusal, when the permanent rate award was approved, to adjust the interim award and award a refund to customers.
An improper accounting treatment of unrecovered fuel costs is no different from an improper inclusion in rate base of unwarranted contributions in aid of construction, or an unwarranted claim for any other improper item of expense. In all such cases the excessive allowance distorts the amount of revenue needed to bring the utility up to the last authorized minimum rate of return.
On the record before the Commission when the interim award was granted, if it had applied only the proper accounting standards and discounted FP&L's unrecovered fuel costs in the revenue deficiency equation, only $15 million (approximately) would have been necessary to restore the company to its then proper rate of return. The additional $54 million increase was plainly awarded only because an erroneous standard of accounting was used and not, as the Commission suggests, because ample evidence was supplied to the Commission later to show other bases for even greater financial relief.
Pursuant to Section 120.68(10), Florida Statutes (1975), the petition for writ of certiorari is granted and Order No. 6591 is quashed insofar as it confirms that portion of Order No. 6456 which grants FP&L interim rate relief predicated on $54 million of unrecovered fuel costs. This case is remanded to the Commission with directions to enter appropriate orders in conformity with this opinion, including a direction to refund to FP&L's customers under Section 366.06(4) the amounts of unrecovered fuel costs which were collected by FP&L between January 28 and May 1, 1975.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG and ROBERTS (Retired), JJ., concur.
NOTES
[1] Public counsel requested review of the interim award here, but the petition was dismissed on the basis of a motion noting that the interim award was not final. Citizens of Florida v. Mayo, 314 So.2d 781 (Fla. 1975). We have determined that interim awards are reviewable only after final action by the Commission. Citizens of Florida v. Mayo (Southern Bell Tel. & Tel. Co.), 322 So.2d 911 (Fla. 1975); Citizens of Florida v. Mayo (Florida Power Corp.), 316 So.2d 262 (Fla. 1975).
[2] The Commission awarded FP&L a general rate increase of approximately $77 million and a rate recovery of franchise fees aggregating $30 million, the latter to be collected from select groups of FP&L's customers. Although the Commission's allocation of franchise fees to specific customers was held improper in another rate proceeding, Plant City v. Mayo, 337 So.2d 966 (Fla. 1976), no timely challenge was made to that aspect of FP&L's permanent rate increase.
[3] The Commission's final order on this point states: "In ratemaking proceedings, we have traditionally disallowed or adjusted out those items which are nonrecurring, extraordinary in nature, and unrepresentative of normal operations. Although the Company contends that 1974, in terms of oil prices, was not unusual, we conclude instead that prices escalated more sharply and in such a greater degree than any time since we assumed jurisdiction over the Company in 1951. We cannot visualize similar conditions occurring in 1975, particularly with respect to the almost 300% increase in costs that occurred in 1974. In any event, we are compelled to characterize the fuel underrecovery as nonrecurring, extraordinary in nature, and unrepresentative of normal operations. As a matter of fact, we note that an overrecovery of current fuel costs has occurred in January and February, 1975 and this is but one indication that conditions have become more stable than they were in 1974."
[4] Maule Industries, Inc. timely filed for review here and public counsel timely cross-petitioned for review of the points now argued. Maule subsequently obtained a voluntary dismissal of its petition. Maule's dismissal does not divest public counsel of standing to continue the proceeding before us.
[5] Section 366.06(4) authorizes Commission action to suspend rates for up to 8 months after their filing "pending a final order ... in any rate proceeding... ." (emphasis added). Technically, it is not necessary for a utility to file a separate request for interim relief since the statute operates to make it available in conjunction with all rate relief requests. It follows, of course, and we so held in the Gulf Power case, that the interim rate procedures enacted in 1974 are an integral part of the general and more elaborate process for obtaining rate increases. See also Citizens of Florida v. Mayo (Florida Power Corp.), 316 So.2d 262, 264 (Fla. 1975). As such, an interim award could never be requested or granted on the basis of a test year different from that used as a basis for the permanent rate increase request. The Commission erred in allowing FP&L to employ a different year for the temporary and partial portion of its permanent and full request. Although that error complicated the accounting aspects of this case, our disposition of the interim rate award makes it unnecessary to solve the accounting difficulties. The procedures used in this case demonstrate why, as a result of the enactment of file and suspend procedures for Florida utilities, these companies may now find it undesirable to file rate hike requests on the basis of a "projected" test year, as was done here. They may, rather, have to choose between that accounting mechanism to minimize regulatory lag and the use of an historic accounting test year on the basis of which they can justify immediate rate relief under the new statutory mechanism. The handicap in being forced by the new statutory scheme to make that choice is not apparent, however. We note that in this proceeding, without any serious discussion or argument, FP&L obtained the benefit of four utility-favoring techniques of rate-making  the file and suspend procedure, the use of a year-end rate base, the benefit of automatic fuel adjustment clauses, and the use of a projected test year.
[6] In Gulf Power we held that the legislative scheme for interim rate awards has pre-empted and now made inapplicable the procedures for emergency rate relief which were sanctioned in the Southern Bell case, so that the Commission's alternate reliance on that case for its procedures was misplaced. In Gulf Power we also dealt with and rejected the suggestion made here that evidence adduced in the course of the permanent rate hearing could be a basis on which to justify the reasonableness of an earlier interim award. "Second, we reject the suggestion that full public hearings conducted in February 1975 could breathe life into the prior proceedings. If the full rate proceeding could provide retroactive justification for an interim award there would have been no need for the Commission to be given preliminary review and suspension authority." 333 So.2d at 8.
[7] The Commission makes two other arguments in support of its action, neither of which we are able to accept. First, it suggests that it never found the rates as initially filed to be unreasonable or unjustified since its order stated only that they "may" be unreasonable, unjust or discriminatory. From this the Commission, joined by FP&L, argues that it need not develop the "additional or corroborative data" which our Gulf Power decision states is essential to the Commission's lifting of a rate suspension. The implication of this suggestion is that the Commission can obviate the need for thoughtful action in the first instance (or, as FP&L puts it, can suspend rates simply because it is in doubt) and then revive those rates on the ground that the initial action taken was tentative and indecisive. We cannot accept this view of the Commission's role. The file and suspend statute requires "a reason or written statement of good cause" for initially withholding consent. We said in Gulf Power that the Commission's suspension of rates means that it is "dissatisfied with the utility's preliminary showing." 333 So.2d at 5. If the Commission does not have a reasoned basis to believe that the rates as filed are unreasonable or discriminatory it would appear to have a statutory obligation to withhold suspension and allow them to become effective.

Second, the Commission also seems to suggest that any defects in its evidentiary development are cured by the mere act of holding hearings prior to lifting a suspension. We do not agree. Procedural rectitude is no substitute for the data-gathering responsibilities we outlined in Gulf Power.
[8] Jacksonville Gas Corp. v. Florida R.R. & Pub. Util. Comm'n., 50 So.2d 887 (Fla.), cert. denied, 342 U.S. 820, 72 S.Ct. 38, 96 L.Ed. 620 (1951). Its application was last affirmed in Shevin v. Yarborough, 274 So.2d 505 (Fla. 1973).
[9] This conclusion seems erroneous as to FP&L's inclusion of unrecovered fuel costs as an operating expense of the test period, however.