ADKINS, Acting Chief Justice.
By petition for writ of certiorari we are asked to review Order No. 8378 entered by the Public Service Commission on June 30, 1978.
This procedure involves an application filed by petitioner Florida Gas Company pursuant to section 366.06(4), Florida Statutes (1977) (The File and Suspend Law), wherein Florida Gas sought the consent of the Commission to new rate schedules designed to generate $2,715,533 in additional annual growth revenue. Florida Gas in its application stated that the 9.67 percent rate of return determined for the Company by the Commission in Order No. 7046 was based on operating data for the calendar year 1974.
Because of inflation since 1974 the Company proposed to change its authorized rate of return so that it could be given an opportunity to earn a fair rate of return. The Company says that its authorized return must be earned under the present economic conditions in order to allow the Company to attract capital on reasonable terms; that present rates and charges are insufficient to cover operating expenses and provide an adequate return on invested capital. The application was bolstered by extensive supporting data.
The pertinent portion of section 366.06(4), Florida Statutes (1977), provides as follows:
Pending a final order by the commission in any rate proceeding under this section, the commission may withhold consent to the operation of all or any portion of the new rate schedules, delivering to the utility requesting such increase, within 30 days, a reason or written statement of good cause for withholding its consent. Such consent shall not be withheld for a period longer than 8 months from the date of filing the new schedules.
When this statute is utilized, the Commission’s alternatives were described in Citizens of Florida v. Mayo, 333 So.2d 1, 4 (Fla.1976), as follows:
(1) If the Commission does not affirmatively act within 30 days to suspend the proposed new rate schedule filed as a part of the request for higher rates, the new rates go into effect automatically on the 31st day following the utility company’s filing. Since the Commission’s inaction is equivalent to its consent to the new rate schedule, no bond is required of the utility and there is no mechanism by which customers of the utility system can ever recover interim charges which, after the full rate proceeding, the Commission may find to have been wholly or partly unwarranted.
(2) If the Commission acts within thirty days to suspend all or part of the tariffs, the utility may not charge its customers the proposed new rates. The Commission’s action is effective on a day to day basis until either (a) it grants full or partial consent to the new rates, or (b) eight months elapse from the date the new schedules were filed. If consent is given before the time expiration, as it was here, the utility may then begin to charge the new rates. Where consent is continuously withheld, the utility may still begin to charge its customers on the new basis after eight months have passed, under bond and record-keeping requirements required by statute.
Thus, as interpreted by this Court, the statute permits the Commission to (1) consent to the new rate schedules on an interim basis pending a final order, (2) suspend the new rate schedules pending the curing of any deficiency noted in the preliminary review of the utilities data, or (3) take no action thereby permitting the new rate to become effective after the expiration of the statutory thirty-day period. The Commission, in its Order No. 8378, listed these alternatives and included a fourth as follows: “(4) dismissal of the application in the event we find the same to be deficient in either form or substance or where other relevant circumstances dictate a dismissal of the proceeding.” (Emphasis added).
*1120 Certainly the Commission could dismiss any application which is deficient on its face in either form or substance. However, the question we must decide is whether the Commission may dismiss an application without notice or a hearing “where other relevant circumstances dictate a dismissal of the proceedings.” In its order the Commission points out that the present filing represents the third occasion within the last three years that Florida Gas has sought adjustments. The Commission’s order contained the following:
Like other major public utilities, the applicant files on a monthly basis its actual rate of return on average net investment. This data enables the Commission to monitor and evaluate the earnings of public utilities on a continuing basis to insure that a utility does not earn in excess of its last authorized rate of return. In our analysis of the data prepared and filed monthly by the applicant with this Commission, we observe the fact that its actual rate of return upon average net investment for the 12 months ended December 31, 1977 was 9.66% and since that time has remained at or near that level.
The Commission denied the Company an opportunity to explain the content of the monthly reports in relation to their application for rate increase. Apparently the Commission conclusively presumed the continued presence of all facts upon which the Commission based its decision in a previous rate case. The Commission, in its order, then said:
It is apparent from a review of this data, as well as the data preliminarily filed by the Company, that applicant is now earning a fair and reasonable return upon its investment through revenues generated by its current level of rates. Consequently, we find as a matter of law that administrative efficiency and justice are furthered by obviating any formal rate proceeding at the threshold rather than continuing a futile docket. Such action avoids a proliferation of unnecessary hearings and is consonant with the admonition of the Supreme Court that unnecessary litigation and associated expenses should be avoided whenever possible. Citizens of the State of Florida v. Mayo, 324 So.2d 35 (Fla.1976). We find this procedure to be necessary and reasonable where a preliminary review of pertinent data related to a rate filing clearly indicates the filing is so patently unnecessary as to warrant dismissal within the 30 day statutory period. We further find this procedure to be a necessary power of the Commission in the exercise of our rate-making jurisdiction over public utilities. Commissioner Mann, dissenting, said:
At the present time, the only document in the record is the application of Florida Gas for a rate increase. On its face, it alleges grounds on which the Commission could grant an increase. My colleagues have denied this petition summarily without a hearing on the basis of information received by them and by me in the course of the staff’s continuing surveillance of utility operations. That information is not part of the record. To use it in any way at this time is to prejudge the merits of the petition. This the law does not allow us to do. This company is entitled to due process.
Due process permits expeditious procedures to allow prompt disposition of matters where the facts cannot be reasonably disputed; but it is wrong to go outside of the record the way the majority have done.
In Florida Rate Conference v. Florida Railroad and Public Utilities Commission, 108 So.2d 601, 607 (Fla.1959), this Court observed:
. [W]e have held that where a rate, rule or regulation is made without statutory authority or without giving the carrier affected by it, reasonable opportunity to be heard, or without obtaining or considering any substantial evidence, where investigation, inquiry and evidence are necessary as a basis for the action taken, the proceeding is not had in due course of law and this court will not enforce it. State ex rel. Railroad Com’rs v. Florida East Coast R. Co., 1912, 64 Fla. 112, 59 So. 385, 393.
*1121 More recently in Citizens of the State of Florida v. Mayo, supra, the Court reaffirmed the public policy of this state favoring traditional due process rights in utility rate hearings.
When factual matters affecting the fairness of utility rates are being considered by a regulatory commission the rudiments of fair play and due process require that the Company must be afforded a fair hearing and an opportunity to explain or rebut those matters. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to avoid delay, when the minimal requirement of a fair hearing has been neglected or ignored. See Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).
This denial of due process requires that Order No. 8378 entered by the Public Service Commission be quashed.
It is so ordered.
BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.