ENGLAND, Chief Justice,
dissenting.
Once again we have for review the financial implications of Florida Power Corporation’s nuclear generating unit commonly known as Crystal River No. 3.[1] The matter brought to us on this occasion is a final order of the Public Service Commission terminating a rate docket (No. 770316-EU), awarding to Florida Power a permanent rate increase, and granting it the right to retain approximately $150,000,000 in revenues received on the basis of an interim rate award. Public counsel for the State of Florida alleges that the Commission’s action is not based on competent substantial evidence and constitutes a departure from the essential requirements of law.
Without detailing the tortuous history of this case, the relevant facts are these. The Commission concluded an earlier, limited rate proceeding in Order 8160, granting Florida Power a permanent annual revenue increase of $59,468,468. Several industrial customer intervenors asked the Commission to reconsider that order. In response, the Commission in Order 8260 expanded the docket to a full revenue requirements case and reclassified the permanent rates granted by Order 8160 as interim (pending the results of the full rate proceeding) and sub *903 ject to refund. This Court, on petition for review, affirmed the Commission’s authority to convert the limited docket into a full rate proceeding. Florida Power Corp. v. Hawkins, 366 So.2d 881 (Fla.1978).
While conducting the full rate review, the Commission was informed by its staff that current monthly financial reports filed by Florida Power indicated the utility was not earning its most recently authorized (1977) rate of return. The staff warned that continuation of the full rate review might result in Florida Power’s justifying a rate increase beyond that which had been awarded on an interim basis. Subsequently, two intervenors filed motions to terminate the proceeding. After hearing oral argument, the Commission denied the motions, but directed its staff to prepare a detailed recommendation suggesting appropriate action.
Later, at an agenda conference at which no participants were allowed to appear, the Commission voted to terminate the proceeding in accordance with a staff recommendation. This action was confirmed by Order 8834 in which the Commission, by taking “official notice” of Florida Power’s monthly financial reports, ordered that the docket be closed and that the rates first authorized by Order 8160 remain in effect on a permanent basis. Moreover, Florida Power was allowed to retain all revenues it had received on an interim basis during the pendency of the full rate proceeding.
Public counsel’s objections to the Commission’s action focus on the following passage from Order 8834:
The monthly financial reports submitted by the Company in compliance with the Commission’s continuing surveillance review program for the months of December, 1978, January and February, 1979, of which we take official notice, reflect that Florida Power Corporation during those months achieved earned rates of return of 8.18%, 8.02% and 7.98% respectively, as compared to its presently authorized rate of return of 8.66%. While it reasonably could be assumed that the extensive evaluation of the company’s performance which takes place in a rate case setting could result in some adjustments to the bases for such calculations, including a determination of the appropriate cost of capital to the company, the disparity between the earnings performance depicted by the monthly financial reports and the presently authorized return indicates strongly that the rates presently in effect do not produce a return that is unreasonably high at the present time. While we of course do not prejudge the results of a full case, we do recognize the possibility that the company under present circumstances could justify, not only the interim increase, but the requirement of additional revenues as well. Under such circumstances, we believe that the tremendous expense — in terms of time and money — associated with a major rate case, which of course is ultimately borne by ratepayers, would be unproductive and unwarranted. Accordingly, we have decided to terminate this docket.
Public counsel argues that Order 8834 is not supported by competent substantial evidence, inasmuch as the monthly financial reports were neither offered into evidence nor properly subjected to official notice under section 120.61, Florida Statutes (1977). Public counsel also contends that the Commission departed from the essential requirements of law in allowing Florida Power to receive the benefits of both an interim and a permanent rate award, without making any findings relative to the utility’s rate base or fair rate of return. I agree with public counsel on both counts.
All parties concede that the monthly financial reports on which the Commission based its decision were not part of the official record in this proceeding. The Commission defends its authority, however, to take “official notice” of these reports under section 120.61, Florida Statutes *904 (1977). That section provides that “[w]hen official recognition is requested, the parties shall be notified and given an opportunity to examine and contest the material.” Like other provisions of the administrative procedure act,[2] section 120.61 guarantees parties the basic rudiments of procedural due process — notice and an opportunity to be heard — before permitting agency action which may affect their vital interests. The need for these procedural safeguards is especially apparent when, as in the present case, the Commission relies on unaudited monthly financial reports submitted by an interested party. Indeed, this Court has quashed the Commission’s prior efforts to base regulatory action upon official notice of such reports because the parties were not afforded an opportunity to contest the data. See Florida Gas Co. v. Hawkins, 372 So.2d 1118 (Fla.1979); Florida Power Corp. v. Hawkins, 367 So.2d 1011 (Fla.1979).
Respondents argue that public counsel had adequate notice and an opportunity to examine and contest the monthly financial reports at oral argument on the motions to terminate. This . argument' overlooks the fact that the Commission’s decision to take official notice of the reports was made at a later agenda conference at which no parties were allowed to participate. Public counsel’s earlier opposition to the motions, which was successful, can in no meaningful sense be characterized as “an opportunity to examine and contest the material” under section 120.61. Before taking official notice of the reports, the Commission should have notified the parties of its intent to rely on matters outside the record and allowed them to specifically contest these matters. See General Development Utilities, Inc. v. Hawkins, 357 So.2d 408, 409 (Fla.1978) (“Section 120.61 . . . contemplates notice of matters to be officially recognized and the opportunity to contest them.” Footnote omitted.).[3] The Commission’s failure to comply with the requirements of section 120.61 constitutes a denial of administrative due process, and prevents the financial reports from serving as “competent substantial evidence in the record” for the Commission’s action. Sections 120.68(10), 120.57(1)(b)5, Fla.Stat. (1977).
Public counsel’s second contention — that the Commission departed from the essential requirements of law in determining Florida Power’s revenue needs — is also well grounded. Past opinions of this Court have established beyond doubt that the statutory scheme for making and adjusting rates is a structured one. In several decisions, we discussed in detail the operation of the “file and suspend” procedures which have been integrated into the normal rate making process. See Florida Power Corp. v. Hawkins, 367 So.2d 1011 (Fla.1979); Maule Industries Inc. v. Mayo, 342 So.2d 63 (Fla.1976); Citizens of Florida v. Mayo, 333 So.2d 1 (Fla.1976). Nothing in those decisions suggests that the Commission may authorize the retention of an interim award without concluding the rate proceeding and verifying the company’s entitlement to both interim and permanent rate relief. Thus, when the Commission decided by Order 8260 to expand the docket into a full rate proceeding in which rate of return, rate base and operating expenses were all relevant factors, it violated the essential requirements of law which we have ' announced when it reversed that determination and simultaneously allowed Florida Power to retain the benefits of both an interim and a permanent award which had never been confirmed by competent substantial evidence.
If we were to allow the Commission to proceed as it did in this case, we would *905 sanction the award of interim and permanent rates — without adequate proof — upon the termination of any full rate proceeding in which interim awards had been granted on the basis of a mere preliminary showing of need. There is no legal support for this result in the general statutory scheme for rate setting or in any past decisions of this Court. The Commission’s action plainly departs from the essential requirements of law.
BOYD and SUNDBERG, JJ., concur.

. This case has been before the Court on four prior occasions. See Florida Power Corp. v. Hawkins, 367 So.2d 1011 (Fla.1979); Florida Power Corp. v. Hawkins, 366 So.2d 881 (Fla.1978); Florida Power Corp. v. Hawkins, 346 So.2d 1248 (Fla.1977); Florida Power Corp. v. Hawkins, No. 51,239 (Fla. Mar. 29, 1977).

. See, e. g., §§ 120.57(1)(b)2, 120.57(2)(a)1, 2, Fla.Stat. (1977).

. The Commission’s notice of oral argument on the motions to terminate was in its standard form, setting forth the time, place, and general purpose of the hearing. Although such notice may be sufficient for purposes of § 120.-57(1)(b)2, Fla.Stat. (1977) (“formal proceedings”), see City of Plant City v. Mayo, 337 So.2d 966 (Fla.1976), greater specificity is required under § 120.61, Fla.Stat. (1977).