John J. Copelan, Jr. Broward County Attorney
QUESTION: 1. Is a pay public parking garage at an airport operated by Broward County a "public street or highway" as defined in s.316.003(53), F.S., which would entitle a handicapped person to park his or her vehicle in such garage free of charge pursuant to s. 316.1964, F.S. (1990 Supp.)? 2. Is such a public parking garage a "metered parking space" such that a handicapped person may park without charge pursuant to s. 316.1964, F.S. (1990 Supp.)? 3. If the answer to these questions is in the affirmative, may the county limit the number of days to which a handicapped or disabled person is entitled to park free of charge at this parking garage, or charge such persons a reduced fee?
SUMMARY: 1. A pay public parking garage at a county operated airport is a "public street or high-way" as defined in s.316.003(53)(a), F.S., and the county cannot impose any charge for parking by handicapped or disabled persons pursuant to s.316.1964, F.S. (1990 Supp.). 2. A pay public parking garage at the Fort Lauderdale-Hollywood International Airport is not a "metered parking space" within the scope of s. 316.1964, F.S. (1990 Supp.). 3. A county may not limit the number of days a handicapped or disabled person may park without charge at a county operated public parking garage.
AS TO QUESTION 1:
A county has original jurisdiction over all streets and highways within its boundaries with the exception of state and municipal roads.[1] Each county has jurisdiction to regulate parking in parking areas located on property owned or leased by the county, regardless of whether such areas are within municipal boundaries.[2] The authority to enforce the traffic laws of the state, including those set forth in Ch. 316, F.S. (1990 Supp.), within the county is vested in the sheriff as set forth in s. 316.640(2)(a), F.S. (1990 Supp.), which provides in part that:
 The sheriff's office of each of the several counties of this state shall enforce all of the traffic laws of this state on all the streets and highways thereof and elsewhere throughout the county wherever the public has the right to travel by motor vehicle.[3] (e.s.)
For purposes of Ch. 316, F.S. (1990 Supp.), a street or highway is defined generally as "[t]he entire width between the boundary lines of every way or place of whatever nature when any partthereof is open to the use of the public for purposes of vehiculartraffic . . . ."[4] (e.s.)
Thus, the key requirement for regulation pursuant to Ch. 316, F.S. (1990 Supp.), is the public's right to travel by motor vehicle in the particular area.
Pursuant to s. 316.1964, F.S. (1990 Supp.):
No state agency, county, municipality, or any agency thereof, shall exact any fee for parking on the public streets orhighways or in any metered parking space from the driver of a vehicle which displays a parking permit or a license plate issued pursuant to [specified statutes] if such vehicle is transporting a person eligible for such parking permit or license plate; nor shall the driver of such a vehicle transporting such a person be penalized for parking, except in clearly defined bus loading zones, fire zones, or in areas posted as "No Parking" zones. (e.s.)
Thus, if a county operated airport parking garage constitutes a public street or highway or metered parking space, the county may not charge for handicapped parking therein. That is, if the parking garage "is open to the use of the public for purposes of vehicular traffic," it is subject to regulation pursuant to Ch.316, F.S. (1990 Supp.).
In AGO's 73-323 and 72-383 this office specifically addressed the applicability of Ch. 316, F.S., to such private property as shopping centers, parking lots, and service stations, where the public has the right to travel. These opinions concluded that local police authorities are authorized to enforce the Uniform Traffic Control Law, issue traffic citations, and investigate and file reports pursuant to Ch. 316, F.S., when an accident has occurred in such areas.
In these earlier opinions the private property in question was determined to be "public" or "quasi-public" based on its use. However, in the instant situation the airport parking garage is county owned and operated and open to the traveling public.
Therefore, I am of the opinion that a parking garage in a county owned and operated airport which is generally open to the public for vehicular traffic is subject to regulation pursuant to Ch.316, F.S. (1990 Supp.).[5] Further, it is my conclusion that the exemption from charge for parking by handicapped persons prescribed by s. 316.1964, F.S. (1990 Supp.), also applies.
Your letter and accompanying materials also raise questions about whether a county airport parking garage comes within the scope of s. 316.003(53)(c), F.S. This statute provides that:
Any area, such as a runway, taxiway, ramp, clear zone, or parking lot, within the boundary of any airport owned by the state, a county, a municipality, or a political subdivision, which area is used for vehicular traffic but which is not open for vehicular operation by the general public [is a "street or highway"].
Therefore, according to this definition, an area in an airport is a street or highway subject to regulation pursuant to Ch. 316, F.S. (1990 Supp.), if it is used for vehicular traffic but is not open for vehicular operation by the general public.
The language of subsection (c) above was added in 1983[6]
and it appears from an examination of the legislative history surrounding passage of this law that it was meant to extend the state traffic code to "airside" areas in an airport to which the public does not have easy access.[7] Such areas would include runways, taxiways, and areas where baggage carts, catering trucks, and other service vehicles travel but which are not used by the general public. This appears to be what the Legislature intended by describing an area as one "used for vehicular traffic but which is not open for vehicular operation by the general public."[8]
AS TO QUESTION 2:
The phrase "metered parking space" is not defined for purposes of Ch. 316, F.S. (1990 Supp.). However, when a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning.[9] A "[p]arking meter" is defined in various sources as "a coin-operated timing device for regulating the parking of motor vehicles"[10]
and "[a] clock set on a post, measuring time of parking; [i]t provides mechanical assistance in the enforcement of parking limitation."[11]
I would note that the phrase "metered parking space" is used in the singular sense and that other provisions of Ch. 316, F.S. (1990 Supp.), dealing with handicapped or disabled parking seem to make a distinction between "street parking" and "publicly owned and operated parking facilities."[12]
Thus, I conclude that "metered parking space" as used in s.316.1964, F.S. (1990 Supp.), refers to an individual parking space with an attendant parking meter which measures elapsed time for a particular parked vehicle.[13]
Based on this analysis, it is my opinion that a public pay parking garage in a county operated airport is not a "metered parking space" within the scope of s. 316.1964, F.S. (1990 Supp.).
AS TO QUESTION 3:
Section 316.1964, F.S. (1990 Supp.), states that "[n]o . . . county . . . shall exact any fee for parking" in the designated areas from the driver of a vehicle displaying a handicapped parking permit or license plate. (e.s.)
In light of the clearly expressed legislative intent,[14]
I must conclude that a county is without authority to limit the number of days to which a handicapped or disabled person is entitled to park free of charge at the county operated airport parking garage.
While I am secure in the conclusions reached in this opinion, I recognize, based on information and analysis which you have supplied, that a number of attorneys throughout the state have researched these statutes and there does not seem to be a consensus on these issues. It may be appropriate, therefore, to suggest that the Legislature revisit s. 316.1964, F.S. (1990 Supp.), in order to more clearly express its intent.
[1] Section 316.006(3)(a), F.S.
[2] Section 316.006(3), F.S. And see, s.316.008(1)(a), F.S., authorizing local governments to regulate or prohibit stopping, standing, or parking on the streets and highways under their jurisdiction and s. 316.008(1)(v), F.S., which authorizes local authorities to regulate, restrict, or prohibit traffic within the boundaries of an airport owned by a county.
[3] See, e.g., AGO 84-1 (municipalities are not authorized by law to enact an ordinance regulating parking for physically disabled persons on private property) and AGO 83-84 (the provisions of Ch. 316, F.S., are enforceable on private property only when the public has a right to travel by motor vehicle thereon).
[4] Section 316.003(53)(a), F.S.
[5] The fact that a fee is charged for parking in this airport garage does not, in my opinion, alter the nature of the garage as a public street or highway. To conclude otherwise would subject toll roads and bridges to questions relating to their nature as public streets and highways. Cf., s. 125.01(1)(m), F.S. (1990 Supp.), authorizing counties to provide roads, bridges, and tunnels including toll facilities; and s. 334.046(1)(c)3., F.S. (1990 Supp.), which sets the development of toll roads as an objective for the Department of Transportation.
[6] See, Ch. 83-164, Laws of Florida.
[7] See, Florida House of Representatives, Committee on Transportation, Audio tape, April 25, 1983.
[8] In construing the meaning of a statute, the primary purpose is to give effect to the intention of the Legislature. To accomplish this, the language of the statute itself is first considered. However, when the language itself is unclear, the legislative history may be consulted for the purpose of determining the legislative intent. See, People's Bank of Jacksonville v. Arbuckle, 90 So. 458 (Fla. 1921), and City of St. Petersburg v. Siebold, 48 So.2d 291 (Fla. 1950). And see, Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861 (1 D.C.A. Fla., 1985), and Philip Crosby Associates, Inc. v. State Board of Independent Colleges, 506 So.2d 490 (5 D.C.A. Fla., 1987) (cardinal rule of statutory construction is that statute should be construed to ascertain and give effect to legislative intent expressed in statute).
[9] See, e.g., Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984); Citizens of State v. Public Service Commission,425 So.2d 534 (Fla. 1982).
[10] Webster's Third New International Dictionary 1642 (1981). And see, The American Heritage Dictionary of the English Language 953 (1979) (defining a "parking meter" as "a coin-operated device to regulate car parking").
[11] Black's Law Dictionary 1272 (rev. 4th ed.).
[12] See, ss. 316.1955 and 316.1956, F.S. (1990 Supp.).
[13] It was my conclusion in Question One that a public parking garage is a "public street or highway" and traffic can be regulated pursuant to Ch. 316, F.S. (1990 Supp.), in any such parking garage. That conclusion, read together with my determination that a "metered parking space" is an individually metered space, would extend the application of s. 316.1964, F.S. (1990 Supp.), to streets, highways, individually metered parking spaces, and parking garages.
Thus, in order to facilitate the Legislature's intent that the handicapped exemption be read broadly, a "metered parking space" should not be read as synonymous with a parking garage.
[14] See, Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984), and Reino v. State, 352 So.2d 853, 860 (Fla. 1977) (when the language of the statute is clear and unequivocal, the legislative intent may be gleaned from the words used without applying incidental rules of construction).