Larry M. Haag Citrus County Attorney
QUESTION: 1. May tourist development tax revenues be used pursuant to s. 125.0104(5)(a)4., F.S. (1990 Supp.), to fund the repair, construction, and improvement of boat ramps and parking facilities which serve inland lakes and rivers in Citrus County?
2. Pursuant to s. 125.0104(5)(a)4., F.S. (1990 Supp.), may tourist development tax revenues be used to fund the dredging of silt and debris from the main spring which feeds Crystal River?
SUMMARY: 1. Section 125.0104(5)(a)4., F.S. (1990 Supp.), does not authorize the use of tourist development tax revenues for the repair, construction, and improvement of boat ramps and parking facilities.
2. Tourist development tax revenues may be used to dredge silt and debris from the main source of Crystal River if the Citrus County Commission determines that this expenditure is primarily related to tourism in the county.
AS TO QUESTION 1:
Your letter states that "there is a great need in Citrus County to construct boat ramps and related parking facilities and to also maintain and otherwise repair said facilities on a continuing basis." These ramps are utilized by visitors to Citrus County who use them to gain access to water bodies in the county for such activities as fishing, skiing, scuba diving and other water related recreational activities.
Section 125.0104, F.S. (1990 Supp.), known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Ch. 212, F.S.[2] Subsection (5) of the act sets forth the purposes for which revenues from the tourist development tax may be expended.
Pursuant to s. 125.0104(5)(a)4., F.S. (1990 Supp.), such funds may be used:
 To finance beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access. (e.s.)
The text underlined above was added in 1987[3] to expand "the use of local option tourist development tax revenues to include shoreline protection, enhancement, cleanup or restoration of inland lakes and rivers to which there is public access."[4]
Where a statute enumerates the things upon which it is to operate or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned.[5]
Thus, the specific enumeration in s.125.0104(5)(a)4., F.S. (1990 Supp.), of those projects for which tourist development tax revenues may be spent implies the exclusion of others.[6]
According to your letter, Citrus County proposes to construct and maintain boat ramps and parking facilities which serve inland lakes and rivers in the county. Section 125.0104(5)(a)1., F.S. (1990 Supp.), specifically authorizes the construction of artificial structures such as publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums with the county. Thus, the Legislature has provided for using tourist development tax revenues to construct certain facilities which do not include boat ramps and parking facilities.[7]
As this office has stated, the terms of s. 125.0104(5)(a)4., F.S. (1990 Supp.), relate to the "actual, physical nature of the beach and [do] not contemplate the construction of artificial structures upon the beach or otherwise authorize activities which do not protect or enhance the physical nature of the beach."[8]
Similarly, the provisions relating to inland lakes and rivers should be read to authorize the direct physical enhancement or protection of these water bodies rather than authorizing the construction of artificial structures upon them or other activities which do not protect or enhance such lakes or rivers.
Thus, the construction of boat ramps and attendant parking facilities in proximity to inland lakes and rivers would appear to be outside the scope of expenditures authorized in s.125.0104(5)(a)4., F.S. (1990 Supp.). AS TO QUESTION 2:
You also ask whether Citrus County is authorized to expend tourist development tax revenues for the dredging of silt and other debris from King Spring which is the main spring feeding Crystal River. From your letter I understand that the public has access to both King Spring and Crystal River.
This office has stated that the purpose and intent of s. 125.0104, F.S., is to provide for the advancement, growth, and promotion of tourism.[9] In AGO 87-16, this office concluded that a county may expend tourist development tax revenues to finance the improvement, maintenance, renourishment, restoration and erosion control of the public beaches on freshwater lakes if primarily related to tourism within the county. The determination, however, as to whether a particular project is tourist related and furthers such a purpose is a factual determination which must be made by the legislative and governing body of the county and not by this office.[10]
As discussed above, the provisions of s. 125.0104(5)(a)4., F.S. (1990 Supp.), should be interpreted to authorize the use of tourist development tax revenues to physically enhance or protect inland lakes and rivers to which there is public access.[11]
A "river" is defined generally[12] as: "a natural surface stream of water of considerable volume[;]"[13]
and"[a] large natural stream of water emptying into an ocean, lake, or other body of water, and usually fed along its course by converging tributaries."[14] A spring which flows into a river would appear to fall within the scope of this broad definition. Thus, a spring would constitute a portion of the river within the scope of s. 125.0104(5)(a)4., F.S. (1990 Supp.).
Therefore, a county is authorized to expend tourist development tax revenues to finance the dredging of silt and debris in the main spring of Crystal River if it is determined by the county's governing body that this activity is primarily related to tourism within the county.
[1] Section 125.0104(1), F.S.
[2] See, s. 125.0104(3)(a), F.S., which states that it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section . . . ."
[3] See, s. 5, Ch. 87-280, Laws of Florida.
[4] See, Staff Analysis, House of Representatives, Committee on Tourism and Cultural Affairs, dated June 8, 1987.
[5] See, AGO 88-49, in which this office advised Monroe County that the expenditure of tourist development tax revenues was limited to those purposes set forth in the statutes.And see, Thayer v. State, 335 So.2d 815, 817 (Fla 1976).
[6] And see, Dobbs v. Sea Isle Hotel, 56 So.2d 341,342 (Fla. 1952), and Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944), for the proposition that a legislative direction as to how a thing shall be done in any other way.
[7] But see, s. 125.0104(5)(b), F.S. (1990 Supp.), which authorizes counties with a population of less than 500,000 to use tourist development tax revenues for, in addition to those purposes set forth in (a), the construction, repair and maintenance of fishing piers.
[8] Attorney General Opinion 90-55.
[9] Attorney General Opinion 83-18.
[10] See, AGO's 87-16 and 83-18.
[11] And see, AGO 95-59 in which this office concluded that Citrus county was authorized to expend tourist development tax revenues to finance the removal of hydrilla and other water weeds from the access if the county determined that such an expenditure was primarily related to tourism in the county.
[12] Where a statute does not specifically define words of common usage, such works must be given their plain and ordinary meaning. See, e.g., Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984), and Citizens of State v. Public Service Commission,425 So.2d 534 (Fla. 1982).
[13] Webster's Third New International Dictionary 1962 (unabridged e. 1981).
[14] The American Heritage Dictionary of the English Language 1121 (new college ed. 1979).