CANADY, J,,
dissenting.
Because I conclude that the PSC acted within its statutory authority in approving cost recovery through the fuel clause for FPL’s Woodford Project and that competent, substantial evidence supports the PSC’s conclusion .that the Woodford Project acts as a long-term physical hedge, I dissent.
I disagree with the majority’s conclusion that under sections 366.06(1) and 366.02(2), Florida-Statutes (2014), “cost recovery is permissible only for costs arising from the ‘generation, transmission, or distribution’ of electricity.”'- Majority op. at 901. Section: 366.02(2) defines an “[ejlectric utility” as' “any municipal electric utility, investor-owned electric utility, or rural electric cooperative, whicfi owns, maintains, or operates an electric generation, ■ transmission, or distribution system within the state[,]” and section 366.06(1) provides that the PSC “shall have the authority to deter *903 mine and fix fair, just, and reasonable rates that may be requested, demanded, charged,-or collected by any public utility for its service.” But even when read together, the plain language of these statutes contains no legislatively imposed limitation on the types of costs that an electric utility can recover through the PSC’s rate-making proceedings.
“The [only] statutory standard imposed upon the Commission is to fix ‘fair, just and reasonable rates.’ ” Citizens of State v. Pub. Serv. Comm’n, 425 So.2d 534, 540 (Fla.1982) (citing. §§ 366.06(2), 366.05(1), Fla. Stat. (1979)). Indeed, the Legislature mandated that th¿ provisions of chapter 366 “be liberally construed” “for the protection of the public welfare[.]” § 366.01, Fla. Stat. (2014). And “[t]his Court has consistently recognized the broad legislative grant of authority which these statutes confer and the considerable license the Commission enjoys as a result of this delegation.” Citizens, 425 So.2d at 540. Neither section 366.02(2), section 366,06(1), nor any other provision in chapter 366 limit the PSC’s authority to approve cost recovery to costs directly expended on generating,' transmitting, or distributing electricity. To insert such a limitation has the effect of rewriting the statutes, which this Court may not do. See Hawkins v. Ford Motor Co., 748 So.2d 993, 1000 (Fla.1999) (“[T]his Court may not rewrite statutes contrary to their plain language.”).
Under the broad discretion afforded to it in chapter 366, the PSC regularly allows utilities to recover costs through the fuel clause for non-fuel items as long as they are projected to result in fuel savings. See e.g., In re: Fuel & Purchased Power Cost Recovery Clause and Generating Performance Incentive Factor, Order No. PSC-01-2516-FOF-EI, 2001 WL 1677492 (Fla. P.S.C. Dec. 26, 2001) (approving cost recovery through the fuei clause for incremental power plant security costs); In Re Fuel & Purchase Power Cost Recovery Clause, Order No. PSC-97-0359-FOF-EI, 1997 WL 199376 (Fla.P.S.C. Match 31, 1997) (approving cost recovery through the fuel clause for FPL’s investment in rail cars). The Woodford Project is projected to result in fuel savings'of $51.9 million, and the magnitude of'potential positive savings exceeds'the magnitude of potential losses. Although it is not possible to know exactly what the actual cost of the gas produced by the Woodford Project will be until it is produced or what the market, price of natural gas will be over the course of the next thirty years, the PSC "has historically relied on’ projections 'to determine whether a capital investment will result in fuel savings to customers and should be recovered through the 'fuel clause. See, e.g., In Re Fuel & Purchased Power Cost Recovery Clause, Order No. PSC-95-1089-FOF-EI, 1995 WL 553104 (Fla.P.S.C. Sept. 5, 1995) (relying on projected savings of $24 million over fifteen years).
Even assuming that chapter 366 implicitly limits the PSC’s .authority to approve cost recovery to costs of generation, transmission, or distribution of electricity, I would still conclude that the PSC acted within its authority in approving cost recovery for the Woodford Project, The purpose of the Woodford Project is to acquire.natural gas, which is used to produce approximately 65% of the electricity FPL generates. Acquiring natural gas is therefore necessary for and integrally related to FPL’s primary function of generating electricity.
Until now, FPL has purchased natural gas on the wholesale market.' There is no dispute that acquiring fuel on the wholesale market is sufficiently related to the generation, of electricity for the PSC to authorize cost recovery through the fuel clause. The Woodford Project would pro *904 vide FPL the ability to acquire natural gas fuel directly from the ground at the production cost, rather than.paying market price. There is no principled distinction between purchasing natural gas on the wholesale market and purchasing it in the ground and extracting it. Nor is there any requirement that fuel used in the generation of electricity be purchased on the market in order for an electric utility to be able to recover the cost of the fuel through the fuel clause. Thus, the Woodford Project is sufficiently related to “the generation, distribution, and transmission of electricity’ to come within, the PSC’s ratemaking authority.[3]
I also disagree with the majority’s conclusion that the Woodford Project does not qualify as a long-term physical hedge because it does not involve “a certain quantity of fuel for a certain price.”. Majority op. at 901. The primary purpose of hedging programs is to reduce the variability or volatility in fuel costs paid by customers over time. E.g., In Re: Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor, Order No. PSC-06-1057-FOF-EI, 2006 WL 3837488 (Fla.P.S.C. Dec. 22, 2006). Purchasing a certain quantity of fuel for a certain price is not the only way to reduce the variability or volatility in fuel costs. See Stephen Maloney, When the Price is Right, 145 No. 10 Pub. Util. Fort. 24, 25 (Oct.2007) (“A hedging strategy employs various physical and financial strategies with the goal of offsetting the risk of unfavorable price swings when purchasing energy.”). The PSC’s conclusion that the Woodford Project qualifies as a long-term physical hedge is supported by testimony at the evidentiary hearing that the costs of the Woodford Project are essentially fixed, highly predictable, well understood, more stable than prices.in the natural gas market, and likely to decrease over the life of the project due to continuing technological advances.
In concluding that the Woodford Project acts as a long-term' physical hedge, the PSC stated:
The objective of any hedging program is to minimize price volatility. We have found that minimizing price volatility produces customer benefits. Financial hedging programs have different terms, from several-weeks to up to two years. At the end of the yéar, the actual costs associated with the programs are passed on to customers. Because natural gas prices are uncertain and volatile, there will be periods when the companies have hedging gains and other periods where the companies will have hedging losses. We note that utilities are not expected to predict or speculate on whether markets wili ultimately rise or fall and actually settle higher or lower than thé price levels that existed at the time hedges were put into place. We have found that hedging maintains flexibility for a utility to create the type of risk management program for fuel procurement that it finds most appropriate while allowing us to retain the discretion to evaluate, and the parties the opportunity to address, the prudence of such programs at the appropriate time.
Any type of hedging is still going to be subject to market conditions. Historically, production costs have been less volatile than market prices. We find the Woodford Project will act as a hedge that is designed to decouple costs from market prices, [n.7] The Woodford Project costs are based solely on the operations and maintenance costs, and on the *905 investment that is required, and is essentially fixed. FPL purchases more natural gas than any .other electric utility in the country. The reality is that in this state, and nationally, we continue to grow the need for natural gas to provide electricity as we move away from coal. Although the Woodford Project is relatively small and will have a small effect on FPL’s overall cost of natural gas and on price hedging, it will act ás a long-term physical hedge (30 years or longer in duration) compared to financial hedges, which typically lock in prices for 12-24 months.
[N.7] We note that customers currently bear certain .drilling, production, and shale gas risks (earthquakes, environmental issues, etc.) as these factors are embedded in the market price of gas.
In re: Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor, Order No. PSC-15-0038-FOF-EI, 2015 WL 183883 (Fla. P.S.O. Jan. 12, 2015) (some footnotes omitted).
The Woodford Project is a capital investment that is designed to decouple the cost of the gas obtained from the market price. The majority points out that if the production cost for the Woodford Project is less than the market price of natural gas, ratepayers will benefit, but if the production cost is higher than the market price, ratepayers will suffer a loss. But ás the PSC recognized, such a risk is inherent with any type of hedging.
In characterizing the Woodford Project as “a speculative oil and gas. venture[,]” majority op., at 899, and concluding that it will result in “more uncertainty ... rather than less[,]” majority op. at 902, the majority is merely substituting its judgment for the PSC’s' judgment- and expressing disagreement with the PSC’s factual findings. But it is the PSC’s “prerogative to evaluate the testimony, of competing experts, and'accord whatever weight to the conflicting, opinions it deems necessary.” Gulf Power. Co. v. Fla. Pub. Serv. Comm’n, 453 So.2d 799, 805 (Fla.1984) (citing United Tel. Co. v. Mayo, 345 So.2d 648, 654 (Fla.1977)). We have stated that we “will not overturn an order of the PSC because we would have -arrived at a different result had we made -the -initial decision and we will -not' re-weigh the evidence; Our task is .to determine whether competent substantial evidence supports a PSC order.” S. All. for Clean Energy v. Graham, 113 So.3d 742, 753 (Fla.2013) (quoting Gulf Power Co., 453 So.2d at 803). The testimony and exhibits presented at the evidentiary hearing provide competent, substantial evidence to support the PSC’s conclusion that the-Woodford Project acts as a long-term physical hedge.
Finally, I disagree with the majority’s conclusion that costs' for the- Woodford Project’cannot be recovered through the fuel clause because “regulated utilities through- the fuel clause do not earn a return on money spent to purchase fuel” or “on the cost-.of hedging .positions purchased.” Majority.op. at 901. The majority is correct that utilities do not earn a profit on fuel by marking up fuel purchased at market price, but the Woodford Project is not a purchase of fuel at market price, it is a capital investment. It is well established that “a regulated public utility is entitled to ‘an opportunity to earn a fair or reasonable rate of return on its invested capital.’ ” Gulf Power Co. v. Wilson, 597 So.2d 270, 273 (Fla.1992) (quoting United Tel. Co. v. Mann, 403 So.2d 962, 966 (Fla.1981)); see also Gulf Power Co. v. Bevis, 289 So.2d 401, 403 n. 1 (Fla.1974) (“A regulated public utility is, of course, entitled to an opportunity to earn a fair rate of return-on-its invested capital.” (citing City-of Miami v. Fla. Pub. Serv. Comm’n, 208 So.2d 249 (Fla.1968))), And the PSC has *906 historically allowed a utility to earn a return on investment for fuel-related capital projects included in the fuel clause. See In re: Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor, Order No. PSC-12-0425-PAA-EU, 2012 WL 3775984, at *1 (Fla.P.S.C. Aug. 16, 2012) (“This Commission, when appropriate,- allows recovery of a return on capital investments through the- Fuel and Purchased Power Cost Recovery- Clause[.]”); In re: Petition by Florida Power & Light Co. to Recover Scherer Unit 4 Turbine Upgrade Costs Through Envtl. Cost Recovery Clause or Fuel Cost Recovery Clause, Order No. PSC-11-0080-PAA-EI, 2011 WL 339538 (Fla. P.S.C. Jan. 31, 2011) (citing- capital projects recoverable through the fuel clause that included a return' on. investment). Thus, the fact that FPL will earn a reasonable rate of return on its capital investment in -the Woodford, Project does not preclude cost recovery through the fuel clause.
For these reasons, I would conclude that the PSC. acted within its authority in.approving cost- recovery through the fuel clause for the Woodford Project, and I would affirm the orders on review..

. Although the majority repeatedly mentions that the Woodford Project involves exploration for natural gas, there was evidence presented at the evidentiary hearing that exploration is not a component of the Woodford Project.